[S. F. No. 22654. In Bank. Jan. 30, 1970.]

In re GLADYS R., a Person Coming Under the Juvenile Court Law.
ROBERT E. NINO, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
GLADYS R., a Minor, etc., Defendant and Appellant.

**COUNSEL**

Sheldon Portmen, Public Defender, Carl Lee Lambert and Thomas C. Hastings, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Gladys R., a 12-year-old girl, appeals from a judgment declaring her a ward of the court and committing her to the custody of the probation officer for private institutional placement. (Welf. & Inst. Code, § 800.) For the reasons we shall point out, the court committed reversible error in reviewing the social study report before the jurisdictional hearing (Welf. & Inst. Code, §§ 701, 702, 706; *In re Steven F.* (1969) 270 Cal.App.2d 603 [75 Cal.Rptr. 887]; *In re Corey* (1968) 266 Cal. App.2d 295, 296 [72 Cal.Rptr. 115]). We also conclude that the juvenile court should consider whether a child appreciates the wrongfulness of her conduct in determining whether the child should be declared a ward under section 602[1] of the Welfare and Institutions Code (Pen. Code, § 26). Finally, we hold that the juvenile court may declare a juvenile a ward under section 602 for perpetration of an act proscribed by Penal Code section 647a with an abnormal sexual interest or intent. (*People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895, 901 [246 P.2d 173].)

The Santa Clara County Superior Court, sitting as a juvenile court, found that the appellant's conduct brought her within the terms of Welfare and Institutions Code section 602 because she committed an act proscribed by Penal Code section 647a (annoying or molesting a child under 18). Immediately after accepting factual allegations that the child committed acts which could invoke the jurisdiction of the court under section 602, the juvenile court proceeded: "Now, we come to the question of what action should be taken, and in this connection, the Court has been supplied with a special report called a social study, which is ordered admitted in evidence at this time *and which has been thoroughly reviewed by the Court.* The social study tells the Court whether the child has a prior record, where the child is now, what the child told the probation officer when interviewed, what the parents told the probation officer when interviewed, the child's school report, welfare report, juvenile hall report, psychological, psychiatric and medical reports, personal history and family backgrounds, and last

[1]Welfare and Institutions Code section 602 reads: "Any person under the age of 21 years who violates any law of this State . . . defining crime . . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." References hereinafter to section 602, without mention of any code, are to the quoted section.

of all the probation officer evaluates that information and data and makes a recommendation to the Court." (Italics added.)

The quoted comments clearly indicate that the court examined the social study report prior to its determination of whether appellant had committed an act that would warrant the court's declaration of a wardship. The report contains matter not relevant to the jurisdiction of the court and therefore inadmissible at the hearing on that issue. (Welf. & Inst. Code, § 701.)

1. *The court committed reversible error in reviewing the social study report before the determination of the issue of jurisdiction.*

The history of Welfare and Institutions Code sections 701,[2] 702,[3] and 706[4] clearly indicates that the Legislature intended to create a bifurcated juvenile court procedure in which the court would first determine whether the facts of the case would support the jurisdiction of the court in declaring a wardship and *thereafter* would consider the social study report at a hearing on the appropriate disposition of that ward.[5] This procedure

---

[2]Section 701 provides that "the court shall first consider only the question whether the minor [comes within the court's jurisdiction], and *for this purpose,* any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence . . . ." (Italics added.)

[3]Section 702 provides that "[i]f the court finds that the minor is [within its jurisdiction], it shall make and enter its findings and order accordingly and shall *then* proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer . . . ." (Italics added.)

[4]Section 706 provides that: "*After* finding [the minor comes within its jurisdiction], the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer . . . ." (Italics added.)

[5]In 1959 the Governor of California appointed a Special Study Commission on Juvenile Justice to undertake a comprehensive study of the California Juvenile Court Law. The commission strongly criticized the juvenile courts because they "do not distinguish between the jurisdictional facts and the social data at the hearing. Consequently, wardship is sometimes decided on issues that evolve from a social investigation even though the jurisdictional facts have not been clearly substantiated.

"In our opinion, a two-stage hearing procedure is essential. This will serve to differentiate more sharply between legal proof and treatment knowledge and will result in the application of each to the appropriate question for court decision.

"We also realize that any increase in the number of hearings may further reduce the time available to hear such case. Therefore, we recommend that both hearings be permitted to be held on the same day, provided the probation report and treatment recommendations are available. The sequence, however, should be preserved in any event." (Report of the Governor's Special Study Commission on Juvenile Justice (1960) p. 28.)

The commission thus recommended new statutory language which, with modifications not at issue in this case, the Legislature enacted as Welfare and Institutions

affords a necessary protection against the premature resolution of the jurisdictional issue on the basis of legally incompetent material in the social report.

A prohibition of review of the social report before a determination of the jurisdictional issue does not hinder the creation of a court atmosphere conducive to a just consideration of the juvenile's case.[6] We recognize that the juvenile court in this case acted entirely within its view of the best interest of the child. It undoubtedly believed that its perusal of the report prior to a decision on the jurisdictional issue would provide helpful background information.[7] ■ We hold, however, that Welfare and Institutions Code sections 701, 702, and 706 prohibit the judge from reading the social report before the jurisdictional hearing. (*In re Corey, supra,* 266 Cal.App.2d 295, 296.)

A recent decision of the Court of Appeal correctly holds that the construction given in *Corey* to the new statutory scheme of Welfare and Institutions Code sections 701, 702, and 706 must apply to all juvenile proceedings, including the instant case, initiated since the 1961 amendments. (*In re Steven F., supra,* 270 Cal.App.2d 603.)[8] *Corey* did not involve a

---

Code sections 701, 702, and 706. *In re Corey, supra,* 266 Cal.App.2d 295, 297-298, quotes these passages from the commission's report in construing the Legislature's intent to foreclose the juvenile court from review of the social study report before determination of the jurisdictional issue.

[6]Other authorities have criticized the practice of reliance by the court on the social study in advance of the jurisdictional hearing: "After an elaborate study of national scope the President's Commission on Law Enforcement and Administration of Justice recommended: 'To minimize the danger that adjudication will be affected by inappropriate considerations, social investigation reports should not be made known to the judge in advance of adjudication.' (The Challenge of Crime in a Free Society, Report of the President's Commission on Law Enforcement and Administration of Justice (Washington 1967) p. 87.)" (*In re Corey, supra,* 266 Cal.App.2d 295, 299.)

[7]Actually, the juvenile and his family might be reluctant to cooperate fully with the probation officer if they thought that the results of the social investigation would become available to the judge prior to the jurisdictional hearing. The probation officer would thus be prevented from submitting to the trial court a social report which contained a complete review of the facts relevant to the ward's disposition. In addition, if the juvenile believed that the probation officer's report would be reviewed prior to the jurisdictional hearing, the important and close relationship between the juvenile and the probation officer might be jeopardized.

[8]The Attorney General also claims that *In re Corey, supra,* 266 Cal.App.2d 295, announces a "new rule" that should be applied prospectively because *Corey* will adversely affect the administration of justice by encouraging attacks upon previous adjudications. The Attorney General points to a 1965 survey indicating that a majority of California judges continued to read the social study before the jurisdictional hearing (see Edwin M. Lemert, The Juvenile Court—Quest and Realities, Task Force Report: Juvenile Delinquency and Youth Crime; The President's Commission on Law Enforcement and Administration of Justice (1967) p. 101) and to certain com-

new constitutional rule that overturned prior decisions (cf., e.g., *Stovall* v. *Denno* (1967) 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]), but rather interpreted statutory provisions whose interpretation had previously remained unsettled.[9] ■ Furthermore, the failure of the minor's attorney to object at the juvenile court hearing to the court's premature use of the social study does not bar the consideration of this issue on appeal; we cannot expect an attorney to anticipate that an appellate court will later interpret the controlling sections in a manner contrary to the apparently prevalent contemporaneous interpretation.

■ We must hold that the court's review of the social study prior to the jurisdictional hearing constituted prejudicial error. Both *In re Corey, supra,* 266 Cal.App.2d 295, 299, and *In re Steven F., supra,* 270 Cal. App.2d 603, 604, state: "Where the commission of a crime is alleged as the jurisdictional fact and the allegation is disputed, the court's error in [reviewing] the social study before the jurisdictional hearing goes so directly to the fairness of the hearing that the resulting adjudication is not saved by article VI, section 13, of the California Constitution." The court's review of the social report in advance of the jurisdictional hearing would perhaps not require reversal in a case in which the contents of the social study entirely favored the minor and his home environment. But in the present case the social study showed some inquiry into appellant's intent under section 647a and some negative indications about appellant's home environ-

ments by B. E. Witkin: "The statutes suggest, if they do not prescribe, a document separate from the probation report, and for a good reason: The data will be in great part irrelevant to and highly prejudicial on the issue of jurisdiction, and the study should not therefore be offered in evidence until the hearing on disposition. [Citations.] But in practice the social study is not held close to the deputy's vest and formally offered in evidence at the proper time. It just sort of appears on the judge's desk, and he knows it is there. May he read it before the first hearing? Should he read it? Can he run an efficient bifurcated hearing from beginning to end without reading it in advance? Those questions are not for me to answer; but if, as I am reliably informed, he does make a practice of reading it before the first hearing, he must in that hearing totally blank out his memory of the wholly inadmissible evidence of other offenses and misconduct, bad reputation, and derogatory opinions of neighbors [and others]." (See Proceedings of the Third Annual Institute for Juvenile Court Judges and Referees, Sponsored by the Judicial Council of California (1964) pp. 124, 141-142.)

The Attorney General's dire predictions have not proved accurate. Following the *Corey* decision on October 1, 1968, and the *Steven F.* decision on March 12, 1969, no great flood of habeas corpus petitions have raised this issue.

[9]*In re Patterson* (1962) 58 Cal.2d 848, 852-853 [27 Cal.Rptr. 10, 377 P.2d 74], does not conflict with the above statement. In *Patterson,* the appellant argued that the probation officer's report was improperly admitted and considered by the juvenile court since it contained conclusions and hearsay. The argument was rejected. The *Patterson* opinion does not indicate that the appellant argued that the probation report included a social study that the court could not properly read before the jurisdictional hearing. *Patterson* does not discuss that question.

ment. Hence, the court's review of the social study prior to the jurisdictional hearing, at which the jurisdictional facts were far from conclusive, constituted prejudicial error.

We turn now to several contentions by appellant that we consider in order to give guidance to the juvenile court upon any further proceedings.

2. *A child under the age of 14 must appreciate the wrongfulness of her conduct in order to become a ward of the juvenile court under section 602.*

As we have stated, section 602 provides that any minor who violates "any law of this State," that defines crime, comes under the jurisdiction of the juvenile court. We shall point out that in order to become a ward of the court under that section, clear proof must show that a child under the age of 14 years at the time of committing the act appreciated its wrongfulness. This conclusion follows from the statutory postulate that the jurisdiction of the court must rest upon a violation of a law that defines crime and from the further statutory requirement of Penal Code section 26, subdivision One,[10] that, by definition, a child under the age of 14 years does not commit a crime in the absence of clear proof that he "knew its wrongfulness."

A ruling that a child could be committed to the juvenile court under section 602,[11] in the absence of such clear proof, would compel the disregard of section 26 or the assumption of its repeal. Indeed, the Welfare and Institutions Code provides that the juvenile courts exercise exclusive jurisdiction over all minors under the age of 16; these children cannot otherwise be tried as criminal offenders. (See Welf. & Inst. Code, § 707; 40 Ops. Cal.Atty.Gen. 83 (1962).) Hence, if section 26 pertains at all to a definition of criminal conduct it must apply to proceedings under section 602 which, in turn, covers "[a]ny person under the age of 21 years who violates any law of this State . . . ."[12]

---

[10]"All persons are capable of committing crimes except those belonging to the following classes: One—Children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." (Pen. Code, § 26, subd. One.) References hereinafter to section 26, without mention of any code, are to the quoted section.

[11]See footnote 1.

[12]Even if section 26 loses entirely its purpose in defining crime, it might still continue to have the auxiliary effect of permitting children under the age of 14 to testify against adult offenders without corroboration (see Pen. Code, § 1111), because the child could not be treated as an accomplice for offenses punishable under sections 286 and 288 of the Penal Code. (E.g., *People* v. *Terry* (1960) 180 Cal.App.2d 48, 59 [4 Cal.Rptr. 597], cert. den. (1961) 364 U.S. 941 [5 L.Ed.2d 372, 81 S.Ct. 458].)

■ We cannot presume the repeal of section 26 by implication; the decisions clearly establish the contrary presumption. (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].) We have said that "To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together." (*California Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; see *Morris* v. *Williams* (1967) 67 Cal.2d 733, 752 [63 Cal.Rptr. 689, 433 P.2d 697].)

In enacting section 602 of the Welfare and Institutions Code, the Legislature must have considered the pre-existing section 26;[13] that section constituted practically the only special provision for children in the entire legal system. Section 26 did not lie at the periphery of the statutory scheme, bearing only tangentially upon juvenile offenders. Necessarily confronted with the section, the Legislature must have intended in its later enactment of section 602 a definition of crime consistent with the older section. If the Legislature had intended to repeal section 26 or to sever it from section 602, it could have done so expressly. Yet the legislative history of the present California Juvenile Court Law, of which section 602 forms a part, indicates no such intent. In fact, the commission that drafted the present law refers to the necessity of "respectable proof of the jurisdictional facts" for the institution of proceedings under section 602 for the violation of "*serious* crimes against persons and property." (Report of the Governor's Special Study Commission on Juvenile Justice, Part I— Recommendations for Changes in California's Juvenile Court Law (1960) p. 21.)

Section 26 accords with the historical treatment of juveniles, deriving from the early common law that children under the age of seven could not be held responsible for criminal conduct. (See *In re Gault* (1967) 387 U.S. 1, 16 [18 L.Ed.2d 527, 539, 87 S.Ct. 1428].) Between the ages of seven and fourteen the common law rebuttably presumed children incapable of criminal acts, unless the particular child possessed the requisite age and experience to understand the wrongfulness of his act. (R. Perkins, Criminal Law (2d ed. 1969) p. 837.)[14] ■ California likewise rebuttably pre-

But even without section 26, a child under 14 years probably would not be considered an accomplice under section 1111 of the Penal Code with respect to a sex offense in which the child is the victim. (See 180 Cal.App.2d at p. 59.)

[13]Penal Code section 26, subdivision One, was enacted in its earliest form in 1850. (Stats. 1850, ch. 99, § 3, p. 229.) The Legislature last amended the statute in 1874 so as to bring it to its present form. (Stats. 1873-1874 (Amendments to the Codes) ch. 614, § 26, p. 422.)

[14]By statute or common law most states adhere to this approach to the responsibility of minors for their conduct. (See, e.g., Idaho Code (1947) § 18-201; Mont.

sumes all minors under the age of 14 incapable of committing a crime, but does not totally exclude any child from criminal responsibility. Section 26 embodies a venerable truth, which is no less true for its extreme age, that a young child cannot be held to the same standard of criminal responsibility as his more experienced elders. A juvenile court must therefore consider a child's age, experience, and understanding in determining whether he would be capable of committing conduct proscribed by section 602.

As we observed in *People* v. *Lara* (1967) 67 Cal.2d 365, 380 [62 Cal. Rptr. 586, 432 P.2d 202], section 26 plays a very definite role in the overall system of protections afforded to minors under the criminal law and under our special juvenile court system.[15] We know of no change that has occurred since the rendition of this decision that prompts its abandonment. To the contrary, one Court of Appeal has apparently considered Penal Code section 26 applicable to section 602 proceedings. (See *In re T.R.S.* (1969) 1 Cal.App.3d 178, 181 [81 Cal.Rptr. 574].)[16]

Furthermore, section 26 provides the kind of fundamental protection to children charged under section 602 which this court should not lightly discard. Section 602 is clearly distinguishable from sections 600 and 601 with respect to the consequences of their operation upon the child: upon the application of section 602, commitment of the youth to the custody

Rev. Code (1947) § 94-201; Okla. Stat. Ann. (1941) tit. 21, § 152; Utah Code Ann. (1953) § 76-1-41; *Blocker* v. *State* (1960) 40 Ala.App. 658 [120 So. 2d 924]; *Clay* v. *State* (1940) 143 Fla. 204 [196 So. 462]; *Prevatte* v. *Director Patuxent Institution* (1968) 5 Md.App. 406 [248 A.2d 170]; *Commonwealth* v. *Green* (1959) 396 Pa. 137 [151 A.2d 241].)

[15]"When the wrongdoing of the minor is not simply a tort but amounts to a crime, a more complex set of laws comes into play. On the one hand, a special system of juvenile courts has been created to deal with such cases in an essentially nonpenal manner, for the protection and benefit of the minor. (Welf. & Inst. Code, div. 2, pt. 1, ch. 2.) On the other hand, if the minor is 18 or over the general criminal court retains primary jurisdiction over his case and need not certify him to the juvenile court (Welf. & Inst. Code, § 604, subd.(b)); and if he is 16 or over he may be tried as an adult on a felony charge if the juvenile court finds him 'not a fit and proper subject' for consideration under the special law (Welf. & Inst. Code, § 707; see 40 Ops.Cal. Atty.Gen. 83 (1962)). *As to the question of liability, all minors of 14 or over are deemed 'capable of committing crimes'; and those under 14 are excepted from this general rule, 'in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.' (Pen. Code, § 26, subd. One.)* As to punishment, minors of 18 or over may be imprisoned in adult institutions (Welf. & Inst. Code, §§ 507, 508) . . . ." (Italics added; fn. omitted.) (*People* v. *Lara* (1967) 67 Cal.2d 365, 380 [62 Cal.Rptr. 586, 432 P.2d 202]; see 67 Cal.2d at p. 398 (dissenting opinion of Peters, J., which apparently concurs with the majority as to application of section 26 to proceedings under section 602).)

[16]Cf. *In re M.G.S.* (1968) 267 Cal.App.2d 329, 337 [72 Cal.Rptr. 808] (Pen. Code, § 26, subd. Three (insanity), applies to juvenile court proceedings under section 602).

of the California Youth Authority becomes far more likely.[17] Section 600 concerns dependent children who need care because of home conditions or medical deficiencies.[18] Section 601 covers delinquent children whose acts fall short of criminal conduct.[19] Section 602 pertains to minors who have violated a court order or a criminal law. (R. Bochés & J. Goldfarb, California Juvenile Court Practice (1968) p. 35.)

If a juvenile court finds a lack of clear proof that a child under 14 years at the time of committing the act possessed knowledge of its wrongfulness under sections 602 and 26, the court might well declare the child a ward under section 600 or 601.[20] These latter provisions carry far less severe consequences for the liberty and life of the child.[21] After all, it is the pur-

[17]See *In re Daniel R.* (1969) 274 Cal.App.2d 749, 754, footnote 2 [79 Cal.Rptr. 247]. If the probation officer files a supplemental petition which states facts sufficient to indicate that a child declared a ward under section 601 of the Welfare and Institutions Code had not received an effective disposition for his rehabilitation, the juvenile court might direct a commitment to the California Youth Authority (see Welf. & Inst. Code, §§ 730, 777). Also, if a section 601 ward violates a court order, the juvenile court may commit him as a section 602 ward of the court. (See Welf. & Inst. Code, §§ 602, 731; Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California Juvenile Court Law (1960) p. 21.)

[18]Section 600. "Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control. (b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, or whose home is an unfit place for him by reason of neglect, cruelty, or depravity of his parents, or of his guardian or other person in whose custody or care he is. (c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality." (Welf. & Inst. Code, § 600.)

[19]Section 601. "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court." (Welf. & Inst. Code, § 601.)

[20]In fact, the most acceptable function of section 601 may be the placement of youths who are not covered by section 602. (See President's Commission on Law Enforcement and the Administration of Justice, The Challenge of Crime in a Free Society (1967) p. 85; President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime (1967) pp. 25-27; J. George, Gault and the Juvenile Court Revolution (1968) pp. 46-48; see also *Fenster* v. *Leary* (1967) 20 N.Y.2d 309 [282 N.Y.S.2d 739, 229 N.E.2d 426, 25 A.L.R.3d 784].)

[21]Compare Welf. & Inst. Code, § 503, with *In re Contreras* (1952) 109 Cal.App.2d 787, 789-791 [241 P.2d 631], and *In re Holmes* (1954) 379 Pa. 599, 615-616 [109

pose of the Welfare and Institutions Code to "insure that the rights or physical, mental or moral welfare of children are not violated or threatened by their present circumstances or environment." (Welf. & Inst. Code, § 19.) Strong policy reasons cast doubt upon the placement of a child who is unable to appreciate the wrongfulness of his conduct with an institution where he will come into contact with many youths who are well versed in criminality.[22] (See President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime (1967) p. 422; Note, *The California Juvenile Court* (1958) 10 Stan.L.Rev. 471, 518-519; Council of State Governments, Juvenile Delinquency (1962) pp. 28-31.) To argue that we should trust entirely to the discretion of the juvenile court in this matter does not justify a ruling that section 26 is inapplicable to the definition of crime within section 602. We cannot condone a decision which would both misinterpret the statute and expose the child to consequences possibly disastrous to himself and society as a whole.

---

A.2d 523, 530] (dissenting opinion of Musmanno, J.); President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime (1967) pp. 360-362.

As we observed in *In re Dennis M.* (1969) 70 Cal.2d 444, 454 [75 Cal.Rptr. 1, 450 P.2d 296], *"Gault* casts doubt on the traditional *parens patriae* theory, and exposes many defects in its practice . . . ." *In re Gault, supra,* 387 U.S. 1, 16-30 [18 L.Ed.2d 527, 539-547, 87 S.Ct. 1428], requires courts to look to the consequences of the proceedings rather than the formal labels to determine what rights are appropriately applied to juvenile proceedings. Here as in *Gault,* "The juvenile offender is now classed as a 'delinquent.' . . . It is disconcerting, however, that this term has come to involve only slightly less stigma than the term 'criminal' applied to adults." (387 U.S. at pp. 23-24 [18 L.Ed.2d at p. 544].) Juvenile records may well haunt the youthful offender throughout his life, making it difficult for him to find employment or enter a career. (See 387 U.S. at pp. 24-25 [18 L.Ed.2d at pp. 544-545].) In addition, the fact that the institution to which he might be sent is called an "industrial school," "receiving home," or other such euphemistic title cannot mask the true nature of confinement in such regimented correctional institutions. (See 387 U.S. at p. 27 [18 L.Ed.2d at p. 545].) In the face of such realities, the statement that the juvenile court protects the youths involved and therefore they need not be afforded their fundamental rights under section 26 will not suffice.

[22]The Attorney General expresses some concern that if section 26 prevents a child from being brought under the supervision of the juvenile court under section 602 "it is quite possible that no other juvenile proceedings could be initiated other than under section 602, where the act amounts to something proscribed by the Penal Code. See *In re Rambeau,* 266 A.C.A. 455, 462-63 (1968) [; cf. *In re Daniel R., supra,* 274 Cal.App.2d 749]." But as we observed in *In re Dennis M., supra,* 70 Cal.2d 444, 456: "Indeed, the youth's alleged crime may often be only the latest or most overt symptom of an underlying behavioral or personality disorder which could equally well warrant a declaration of wardship pursuant to other provisions of the code." (Citing Welf. & Inst. Code, §§ 600, 601, and *Rambeau.)*

Other sections may possibly be invoked to provide for a wardship for this child with no injurious potentials. Section 601 provides that a child who disobeys the lawful orders of his parents or school authorities, who is beyond the control of such persons, or who is in danger of leading an immoral life may be adjudged a ward of the court. Section 601 might clearly cover younger children who lack the age or experience to understand the wrongfulness of their conduct. If the juvenile court considers section 601 inappropriate for the particular child, he may be covered by the even broader provisions of section 600. (Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in Juvenile Court Law (1960) pp. 18-21.)

 Section 602 should apply only to those who are over 14 and may be presumed to understand the wrongfulness of their acts and to those under the age of 14 who clearly appreciate the wrongfulness of their conduct.[23]
 In the instant case we are confronted with a 12-year-old girl of the social and mental age of a 7-year-old. Section 26 stands to protect her and other young people like her from the harsh strictures of section 602.
 Only if the age, experience, knowledge, and conduct of the child demonstrate by clear proof that he has violated a criminal law should he be declared a ward of the court under section 602.

3. *A child may be declared a ward of the juvenile court under section 602 for conduct proscribed by Penal Code section 647a.*

 Penal Code section 647a provides: *"Every person* who annoys or molests any child under the age of 18 is a vagrant . . . ."* (Italics added.) Clearly, the words "[e]very person" include a minor as well as an adult. We believe, therefore, that a juvenile court may declare a juvenile to be a ward of the court under section 602 for an act violative of Penal Code section 647a.

We point out, however, the comparatively narrow province of section 647a; it applies only to offenders who are motivated by an unnatural or abnormal sexual interest or intent. *People* v. *Pallares, supra,* 112 Cal. App.2d Supp. 895, 901, in rejecting a contention that the words "annoys or molests" in section 647a rendered the section impermissibly vague, stated in part: "When [these words] are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural

---

[23]See *In re T.R.S., supra,* 1 Cal.App.3d 178, 181.

or abnormal sexual interest or intent with respect to children." Several Courts of Appeal have cited and followed *Pallares*. (E.g., *People* v. *Carskaddon* (1959) 170 Cal.App.2d 45, 47 [338 P.2d 201]; *People* v. *Thompson* (1959) 167 Cal.App.2d 727, 733 [335 P.2d 249]; *People* v. *Moore* (1955) 137 Cal.App.2d 197, 200 [290 P.2d 40]; see *In re Sheridan* (1964) 230 Cal.App.2d 365, 372 [40 Cal.Rptr. 894]; *People* v. *Mizer* (1961) 195 Cal.App.2d 261, 268-269 [15 Cal.Rptr. 272]; 2 Witkin, Cal. Crimes (1963) § 619, pp. 567-568.)

█ "The primary purpose of [section 647a] is the 'protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter.' (*People* v. *Moore, supra,* 137 Cal.App.2d 197, 199; *People* v. *Pallares,* 112 Cal.App.2d Supp. 895, 900 . . . . )" (*People* v. *Carskaddon* (1957) 49 Cal.2d 423, 425-426 [318 P.2d 4]; see *Mandel* v. *Municipal Court* (1969) 276 Cal.App.2d 649, 670-671 [81 Cal.Rptr. 173]; *In re Sheridan, supra,* 230 Cal. App.2d 365, 371; *In re Huddleson* (1964) 229 Cal.App.2d 618, 623-624 [40 Cal.Rptr. 581]; cf. *In re Cregler* (1961) 56 Cal.2d 308 [14 Cal. Rptr. 289, 363 P.2d 305].) Considering this purpose, the connotation of the words "annoy" and "molest" as used in the section, and the rule that we must give a criminal defendant the benefit of every reasonable doubt as to whether the statute is applicable to him (*People* v. *Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675]; *In re Zerbe* (1964) 60 Cal.2d 666, 669 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]), we reaffirm the construction given section 647a in *Pallares* and subsequent cases.[24]

During the 17 years since the decision in *People* v. *Pallares, supra,* 112 Cal.App.2d Supp. 895, the Legislature has not amended section 647a to

---

[24]The Attorney General cites *People* v. *Carskaddon, supra,* 49 Cal.2d 423, 426, in support of his contention that motivation by an abnormal sexual intent does not constitute an element of the crime in question. We observed in *Carskaddon* that "as used in this statute, [the words "annoy" and "molest"] *ordinarily* relate to 'offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender.' (*People* v. *Pallares, supra,* p. 901.) Ordinarily, the annoyance or molestation which is forbidden is 'not concerned with the state of mind of the child' but it is 'the objectionable acts of defendant which constitute the offense,' and if his conduct is 'so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would "annoy or molest" within the purview of' the statute. . . ." (Italics added.) The Attorney General seizes upon the italicized word "ordinarily," but *Carskaddon* clearly did not intend to overrule *Pallares* and subsequent cases that regard motivation by an abnormal sexual interest or intent as an element of the offense. *Carskaddon* did not state that such motivation did not constitute an element of the crime and, to the contrary, cited *Pallares* with apparent approval. In *Carskaddon* the court found no evidence that the defendant had committed an act coming within the purview of section 647a, and therefore held it unnecessary in that case to consider the matter of motivation.

exclude motivation by an abnormal sexual interest or intent as an element of the offense, and during those years the Legislature has amended the section in other respects on three occasions. (Stats. 1955, ch. 169, § 3, p. 639; Stats. 1957, ch. 1735, § 1, p. 3120; Stats. 1967, ch. 154, § 1, p. 1241.) Under the circumstances, we must generally presume the Legislature has acquiesced in the judicial construction. (See *Richfield Oil Corp.* v. *Public Utilities Com.* (1960) 54 Cal.2d 419, 430 [6 Cal.Rptr. 548, 354 P.2d 4].)

We conclude that a juvenile court may declare a juvenile to be a ward of the court under Welfare and Institutions Code section 602 for commission of an act proscribed by Penal Code section 647a. We need not decide however, whether sufficient evidence, particularly under section 26, was introduced in the instant case to support a finding that an abnormal sexual interest or intent motivated appellant's conduct. Nor need we decide whether the court failed to render such a finding since, as we have seen, the court's review of the social study report prior to the jurisdictional hearing in itself requires reversal of the judgment. The parties may, of course, introduce, in any further proceeding, additional evidence of such abnormal sexual interest, as well as additional evidence of the minor's appreciation of the wrongfulness of her conduct.

We summarize our position on the two chief issues of this case in a few words. Our first major holding precludes the juvenile court from reading the social study report prior to the determination of jurisdiction since reliance upon legally incompetent material in the report could induce prejudice. In reaching our second ruling we have recognized that over the past centuries our society has attained a stage of relative sophistication in which it realizes that antisocial conduct in most cases stems from psychological motivation in the individual that cannot be segregated into the easy categories of "criminal" or "non-criminal." It would be particularly undesirable for a juvenile court, arbitrarily, without analysis of the child's appreciation of the "wrongfulness" of her conduct, to hold this emotionally disturbed child of 12 years guilty of criminal conduct. To reach that result we would, in our judgment, be compelled to misread the pertinent statutes, to disregard even our presently inadequate knowledge of psychology, and to retreat to an approach which pre-dates the early common law.

The judgment is reversed and the case is remanded to the Santa Clara County Superior Court, sitting as a juvenile court, for further proceedings consistent with this opinion.

Traynor, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—I concur with the majority opinion except the portion which holds that in order for a minor under 14 to be within the jurisdiction of the juvenile court under Welfare and Institutions Code section 602 there must be "clear proof" that the minor at the time of committing the crime knew of its wrongfulness (Pen. Code, § 26, subd. One).[1] With respect to that portion I dissent.

Proceedings in the juvenile court are conducted for the protection and benefit of minors and not to prosecute them as law violators (Welf. & Inst. Code, § 502; *In re Dennis M.,* 70 Cal.2d 444, 456 [75 Cal.Rptr. 1, 450 P.2d 296]).[2] It is unreasonable to believe that the Legislature intended Penal Code section 26, subdivision One, to apply in a proceeding instituted for the minor's benefit and which seeks to determine whether the minor comes within the terms of section 602.[3] Application of that subdivision in such juvenile court proceedings could result in excluding some minors who are in dire need of the care and guidance afforded by the Juvenile Court Law from receiving those benefits. It appears likely that the very minors so excluded would be those in greater need of receiving such care than others more sophisticated who plainly knew that their acts were wrongful.

The majority state, "If a juvenile court finds a lack of clear proof that a child under 14 years at the time of committing the act possessed knowl-

---

[1]Welfare and Institutions Code section 602 provides: "Any person under the age of 21 years who violates any law of this State . . . defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

Penal Code section 26 provides: "All persons are capable of committing crimes except those belonging to the following classes: One. Children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them, they knew of its wrongfulness."

References hereinafter to sections 602 and 26, subdivision One, without mention of any code, are to the quoted sections.

[2]Section 502 reads: "The purpose of this chapter [the Arnold Kennick Juvenile Court Law] is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes."

[3]Penal Code section 26 was enacted in 1872 and last amended in 1873-1874, long before the juvenile court system was established in this state (see Cal. Juvenile Court Practice (1968) p. 14).

edge of its wrongfulness under sections 602 and 26, the court might well declare the child a ward under [Welfare and Institutions Code] sections 600 or 601."[4] The quoted statement, however, fails to give adequate consideration to the fact that many children who violate a law defining a crime may not be found to come within either section 600 or 601. Under the majority position such children will be deprived of the attention they need in order to become law-abiding citizens. For example, a 12-year-old boy on one occasion exhibits a loaded gun in a threatening manner in the presence of another (Pen. Code, § 417), and the evidence does not show his conduct was the result of "a mental or physical deficiency, disorder, or abnormality" (see Welf. & Inst. Code, § 600, subd. (c)). A 13-year-old girl has possession of marijuana (Health & Saf. Code, § 11530). A 13-year-old boy on one occasion commits statutory rape (Pen. Code, § 261, subd. 1), with a willing 13-year-old girl in a private place, or goes joyriding (Pen. Code, § 499b) or commits petty theft (Pen. Code, § 488). In none of the foregoing instances is there "clear proof" that the minor at the time of committing the crime had knowledge of its wrongfulness. In the foregoing instances some juvenile courts might conclude that the minor did not come within either section 600 or 601, and additional proof to bring the minor within section 600 or 601 might not be available.

It is implicit in the above quoted statement of the majority that knowledge of the wrongfulness of the act is not required for an adjudication that a minor under 14 is a person described by section 601. A minor may be adjudicated to come within section 601 where he has persistently refused

---

[4]Welfare and Institutions Code section 600 reads: "Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, or whose home is an unfit place for him by reason of neglect, cruelty, or depravity of either of his parents, or of his guardian or other person in whose custody or care he is.

"(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality."

Welfare and Institutions Code section 601 reads: "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court."

References hereinafter to sections 600 and 601, without mention of any code, are to the quoted sections.

to obey the reasonable and proper orders of school authorities. It would have been anomalous had the Legislature required knowledge of the wrongfulness of his act by a minor under 14 who committed a serious crime in order for the court to have jurisdiction under one section and not to have required it for a relatively lesser transgression under another. The welfare of the child and the best interests of society manifestly would make jurisdiction of the former child more imperative than jurisdiction over the latter child. Although one difference exists with respect to the disposition that may be made of a minor found to come within section 601 and a minor found to come within section 602,[5] otherwise the same dispositions are authorized for both such minors and both may be ordered confined, for example, in a juvenile home. (Welf. & Inst. Code, §§ 725, 730, 731, 733, and 734.)

The common law rebuttable presumption of lack of criminal capacity of a child between 7 and 14 has been regarded as inapplicable in juvenile court proceedings. (*Borders* v. *United States* (5th Cir. 1958) 256 F.2d 458, 459; see *Juvenile Court* v. *State* (1918) 139 Tenn. 549 [201 S.W. 771, 773]; 31 Am.Jur. (1958 ed.) Juvenile Courts, etc., § 39, p. 317; Rubin, Crime and Juvenile Delinquency (1961) p. 56.) The cited cases reasoned that juvenile court proceedings are not criminal in nature and are not instituted to punish the child for any offense but rather have the purpose of providing for the child's welfare. In this state the Legislature has specifically provided that a juvenile court proceeding shall not be deemed a criminal proceeding. (Welf. & Inst. Code, § 503.) In the light of *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], which held that certain procedural protections required by due process are applicable in juvenile court proceedings, such proceedings may not be regarded in all cases for every purpose as civil rather than criminal. However, as we pointed out in *In re Dennis M., supra*, 70 Cal.2d 444, 456, "even after *Gault* . . . juvenile proceedings retain a *sui generis* character; although certain basic rules of due process must be observed, the proceedings are nevertheless conducted for the protection and benefit of the youth in question." Thus the conclusion reached in *Borders* and *Juvenile Court* remains valid.

In support of its position that subdivision One of section 26 applies in a juvenile court proceeding under section 602, the majority state that "the juvenile courts exercise exclusive jurisdiction over all minors under the age of 16" and that "we cannot presume the repeal of [subdivision One of]

---

[5]The circumstances under which a section 601 ward and a section 602 ward may be committed to the Youth Authority are not identical. (See Welf. & Inst. Code, §§ 602, 730, 731, 733, and 734.)

section 26 by implication; the decisions clearly establish the contrary presumption." Even if it be assumed that the former quoted statement is correct, it does not follow that subdivision One of section 26 is repealed by implication by a determination of the inapplicability of that subdivision in a juvenile court proceeding under section 602. As the majority recognize, that subdivision is applicable where an adult defendant charged with a sex crime against a child contends that the latter is an accomplice whose testimony requires corroboration (Pen. Code, § 1111). (E.g. *People* v. *Terry,* 180 Cal.App.2d 48, 59 [4 Cal.Rptr. 597]; *People* v. *Williams,* 12 Cal.App. 2d 207, 208 et seq. [55 P.2d 223]; *People* v. *Becker,* 140 Cal.App. 162, 164 [35 P.2d 196]; see 1 Witkin, Cal. Crimes (1963), p. 122.)

The majority also note that "Section 602 is clearly distinguishable from sections 600 and 601 with respect to the consequences of their operation upon the child: upon the application of section 602, commitment of the youth to the custody of the California Youth Authority becomes far more likely." However, the Welfare and Institutions Code places restrictions on such a commitment (§ § 733 and 734),[6] and where such a commitment is authorized it is only one of several possible alternatives.[7] Under the circumstances the fact that Youth Authority commitment may be an alternative available for a minor found to be a person described by section 602 should not preclude holding subdivision One of section 26 is inapplicable in a juvenile court proceeding under section 602.

The majority rely upon statements quoted from *People* v. *Lara,* 67 Cal.2d 365, 380-381 [62 Cal.Rptr. 586, 432 P.2d 202]. Those statements, however, were made in connection with our rejection of the claim that defendants, aged 17 and 18 at the time of the crime, had not knowingly waived their rights to counsel and to remain silent, and *Lara* did not involve or

---

[6]Section 733 prohibits commitment to the Youth Authority of specified persons including, among others, a ward under 8 years of age, and section 734 prohibits such a commitment "unless the judge . . . is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

[7]Where the court has found the minor to be a person described by section 602, it may, without adjudging the minor a ward of the court, place the minor on probation under the supervision of the probation officer, or the court may adjudge the minor to be a ward of the court. (Welf. & Inst. Code, § 725.) ". . . no ward . . . shall be taken from the physical custody of a parent . . . unless upon the hearing the court first finds" one of several enumerated facts (e.g. the minor has been tried on probation and has failed to reform). (Welf. & Inst. Code, § 726.) Where the court has found such a fact exists, it may order for a section 602 ward any of the types of treatment authorized for a section 600 or 601 ward (e.g. commit minor to care of probation officer to be placed in suitable family home or suitable private institution, commit minor to juvenile home) or may commit the minor to the Youth Authority (Welf. & Inst. Code, § 731), subject to the restrictions heretofore mentioned.

decide the question of the applicability of subdivision One of section 26 in a proceeding to determine whether a minor is a person described by section 602.

*In re T.R.S.,* 1 Cal.App.3d 178, 181 [81 Cal.Rptr. 574], also cited by the majority, appears to have merely assumed without deciding that subdivision One of section 26 applies in a proceding to determine whether a minor less than 14 is a person described by section 602.[8]

Subdivision *Three* of Penal Code section 26 (insanity) has been held applicable in a juvenile court proceeding to determine whether a minor is a person described by section 602 (*In re M.G.S.,* 267 Cal.App.2d 329, 337 [72 Cal.Rptr. 808]), but it does not follow that subdivision *One* of section 26 is likewise applicable in such a proceeding. Permitting the defense of insanity in such a proceeding does not deprive the minor of needed care (see, e.g., Welf. & Inst. Code, § 705), whereas holding subdivision One of section 26 applicable in such a proceeding can, as we have seen, deprive minors of needed care.

For the reasons above stated I would uphold the position of the Attorney General that subdivision One of section 26 is inapplicable in a juvenile court proceeding to determine whether a minor comes within section 602.

McComb, J., concurred.

---

[8]With respect to that question *In re T.R.S., supra,* 1 Cal.App.3d 178, 181, stated only, "There is no merit to the contention the evidence, by 'clear proof' as required by Penal Code, section 26, does not establish the minor knew the wrongfulness of his conduct."