Filed 7/18/25  In re S.R. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | A169269 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>    Defendant and Appellant. | (City and County of San Francisco Super. Ct. No. JW226035) |

The juvenile court found true an allegation that S.R. committed a robbery and adjudged S.R. a ward of the court. S.R. contends the finding must be reversed because the court reviewed his probation report in violation of *In re Gladys R.* (1970) 1 Cal.3d 855 (*Gladys R.*) and the California Rules of Court,[1] rule 5.780(c). We agree with S.R. that the court improperly reviewed the report, and that the error was prejudicial. We reverse and remand.

**BACKGROUND**

At approximately 4:20 p.m. on March 18, 2022, the victim, M.C., was out for a walk after a long workday. As M.C. was walking past a parking lot,

---

[1] Further rule references are to the California Rules of Court.

he noticed an older dark grey or black sedan that slowed down significantly and did not park in the lot. The car pulled out of the lot and stopped beside him. Three men holding guns rushed out of the car towards M.C., and screamed, "Give me your watch. Give me your wallet." The driver remained in the car. M.C. next remembered being on the ground on his back, but he could not recall whether he fell or was pushed. While the individuals demanded his wallet and watch and tried to empty his pockets, M.C. screamed but was unable to call for help or move. One of the three removed M.C.'s watch from his wrist, hit him with the butt of his gun, and yelled a homophobic slur at him. Then they all ran back to the car and drove away.

Bystanders, who came to M.C.'s aid, called 911. When speaking to the responding police officers, M.C. stated that his assailants were in an old "beat-up" Mercedes, based on the description given to him by a bystander who helped him immediately after the robbery. M.C. also told the officers that his assailants were "black," in their "mid-to-late twenties" and wearing "all black clothing." When he was asked if he could identify his assailants, M.C. responded "I don't think so. They had like scarves around the bottom part of their face. I don't think I would be able to identify them."

On March 22, 2022, the district attorney filed a wardship petition, under Welfare and Institutions Code section 602, subdivision (a),[2] alleging S.R. committed three felonies: second degree robbery (Pen. Code, § 211; count I), possession of a firearm by a minor (Pen. Code, § 29610; count II), and assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4); count III). The following day, the juvenile court held a detention

---

[2] Further statutory references are to the Welfare and Institutions Code, unless stated otherwise.

hearing and placed S.R. in his mother's custody, subject to various terms and conditions.

Beginning on October 31, 2023, the juvenile court held a contested multi-day jurisdictional hearing for S.R. and the other juvenile involved in the incident. M.C. testified for the prosecution. M.C. said that he did not make any identifications of his assailants on the night of the robbery. He first recognized S.R. and his co-responsible as two of the assailants during the initial detention hearing in March 2022, about five days after the robbery. M.C. said that when he saw the juveniles' faces on the court's video conferencing platform he had a "visceral" reaction that "took [him] right back to that moment, and I could place them in the attack itself." M.C. then identified S.R. and his juvenile co-responsible in the courtroom. M.C. testified that he recognized S.R. by his eyes, which were uncovered during the robbery. M.C. was 95 percent certain of his identification of each of the juveniles.

M.C. also said that he told Assistant District Attorney Kasie Lee in March or April of 2022 that he recognized the juveniles after the initial detention hearing. M.C. also provided a statement to a police sergeant identifying the juveniles in July 2023.

Under cross-examination, M.C. confirmed that he initially described his assailants as "black male adults, 20's, 30's, all wearing all black" and that he said he didn't think he could identify his assailants if they were presented to him. M.C. also admitted that he recalled each of the three as having a dark complexion. S.R.'s counsel asked M.C., "Right now in court, as we sit here today, as you look at [S.R.], is it apparent to you that he's not black?" M.C. stated, "He's a person of color." Counsel responded, "Okay. I'll give you that. Does he appear to be Latino?" M.C. answered, "He could be of mixed race."

Counsel asked again, "So you think he is black?" M.C. responded, "He could be. I don't know. I don't know who his parents are." M.C. also confirmed that the robbery happened very quickly.

S.R.'s counsel called an eyewitness memory and identification expert. She listed ten factors that can affect an eyewitnesses identification in a situation like this one, including exposure time, distraction, weapon focus, stress, cross-racial identification, disguise, time delay, confirmation bias, and bias of an in-court identification. Based on a hypothetical closely tracking the facts of this case, the expert testified that taking into account the ten factors, an eyewitness identification would not be reliable.

The parties stipulated that M.C.'s watch was recovered from the center console of a car, and that car was the same car described by M.C. during his testimony. The parties also stipulated that two minors, including S.R., and two adults were arrested the night of the robbery after about four and a half hours later, with S.R. being arrested inside of a parking garage. The stipulation did not include any information about the location of the car.

The parties also stipulated to the admission of various photos of the juveniles and an email from ADA Kassie Lee to S.R.'s counsel. S.R.'s counsel moved the juvenile court's minutes into evidence and requested the court take judicial notice of its minutes. The court took judicial notice of the entire record and stated it would review the record during the trial.

The juvenile court found the allegation that S.R. committed second degree robbery true but dismissed all the other counts. After the court announced its finding, S.R.'s counsel asked for clarification regarding the scope of the court's review of the record. The court responded: "I didn't read the police report, but I read all of the other stuff." S.R.'s counsel went on to ask whether the court considered the probation reports, which "would have

4

made factual assertions with regard to the integrity of what happened." The court replied that it "took what was in the trial record into consideration. The Court took judicial notice of the file. You asked me to do, which I did." S.R.'s counsel clarified that he specifically "mov[ed] the minutes into evidence." The court said it would "decline to offer a Statement of Decision, if that's what you're asking. I don't have to do that, and I'm not going to do that."[3] S.R.'s counsel again asked for clarification, stating "my only request was for the Court to take judicial notice of the court minutes." The court responded: "Well, I took the judicial notice of the entire file which, by the way, included many home detentions, many, all of which were sterling, outstanding, as far as the behavior of both of these kids from the time they first appeared in juvenile court until the present time. I want to commend both of you for that. That's all I'm going to say."

## DISCUSSION

### A. The Juvenile Court Reviewed the Record, Including the Probation Report.

"The primary purpose of the jurisdiction hearing in a delinquency proceeding is to determine whether sufficient evidence exists to declare the minor a ward of the juvenile court." (*In re P.A.* (2012) 211 Cal.App.4th 23, 31; § 701 [directing juvenile court, at the hearing, to "first consider only the question whether the minor is a person described by Section . . . 602"].) "The history of Welfare and Institutions Code section 701 . . . clearly indicates that the legislature intended to create a bifurcated juvenile court procedure in which the court would first determine whether the facts of the case would support the jurisdiction of the court in declaring a wardship and *thereafter*

---

[3] The court followed this statement by reading the juveniles their right to appeal, "in an abundance of caution."

5

would consider the social study [portion of a probation] report at a hearing on the appropriate disposition of that ward. This procedure affords a necessary protection against the premature resolution of the jurisdictional issue on the basis of legally incompetent material in the social report." (*Gladys R.*, *supra,* 1 Cal.3d at pp. 859–860, footnotes omitted.)

When *Gladys R., supra,* 1 Cal.3d 855 was decided in 1970, however, section 701 provided that the juvenile court could consider " 'any matter of information relevant and material to the circumstances or acts which are alleged to bring [the minor] within the jurisdiction of the juvenile court.' [¶] In 1976, these words were deleted and section 701 was amended to provide that '[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602.' " (*In re James H.* (1981) 121 Cal.App.3d 268, 271.) This portion of section 701 remains unchanged. (§ 701.) Additionally, rule 5.780(c), enacted after *Gladys R., supra,* 1 Cal.3d 855 was decided states: "Except as provided by law, the court must not read or consider any portion of a probation report relating to the contested petition before or during a contested jurisdiction hearing."

S.R. contends the juvenile court reviewed the probation report and other documents in the case file "that contained significant jurisdictional facts about the incident which were not otherwise in evidence at the jurisdictional hearing" in violation of *Gladys R.*, *supra*, 1 Cal.3d at pages 860–861 and rule 5.780(c), and we must reverse. We agree.

When S.R.'s counsel requested the juvenile court to take judicial notice of the court minutes, the court stated it would take judicial notice "of

6

everything in the file." At the end of the jurisdictional hearing, after the court found the allegations in the petition true, S.R.'s counsel asked the court whether it read the file. The court acknowledged that it did, and clarified that it did not read the police report but considered everything else in the record.

The file contains the probation department's March 23, 2022, detention report, which includes a summary of the offenses based on the San Francisco Police Department report. That police report was filed with the court on February 16, 2023. Additionally, the file contained various motions for informal probation and motions to dismiss with supporting papers that included details from the probation report and police report not presented in evidence at the jurisdiction hearing. Therefore, when the juvenile court said it read "all of the other stuff" in the file except the police report, it implicitly confirmed that it reviewed the probation report. This was prohibited by *Gladys R., supra,* 1 Cal.3d 855 and rule 5.780(c).

The People argue that S.R. forfeited this argument because he failed to raise it at the hearing. We agree that S.R.'s counsel requested the juvenile court take judicial notice of the minutes, and did not object when the court announced it would take judicial notice of the entire record. But based on the colloquy between S.R.'s counsel and the court, counsel was clearly requesting that the court notice and review only the court minutes. After the court indicated it would "review these files" and take judicial notice, counsel stated, "If for some reason they're not in there, then I think we can bring this back up." Moreover, when the court announced its decision, counsel inquired whether the court considered the probation report, and the court declined to directly answer the question. (See *People v. Scott* (1978) 21 Cal.3d 284, 290

7

["An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide"].)  This issue was preserved for appeal.

### B. The Juvenile Court's Error was Prejudicial.

The People argue "any error was harmless because the court's finding was supported by the facts presented at the hearing."  The parties agree that we should analyze this harmless error argument under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.  We review the record as a whole to determine whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*Ibid.*)

If the jurisdictional facts presented at the hearing are "far from conclusive," review of the probation report prior to conclusion of the jurisdictional hearing will constitute prejudicial error.  (*Gladys R.*, *supra*, 1 Cal.3d at pp. 861–862.)  Where the "determination of jurisdiction" is made by "closely balanced evidence, reversal is appropriate."  (*In re James B.* (2003) 109 Cal.App.4th 862, 875.)  Conversely, a finding of juvenile court " 'misconduct is not reversible in the face of convincing evidence of guilt.' " (*Ibid.*)

Here, the evidence presented at the jurisdictional hearing connecting S.R. to the robbery was far from conclusive.  S.R. was tied to the crime by M.C.'s testimony that identified S.R. as his assailant, and the stipulated facts that S.R. was arrested inside a parking garage four and a half hours after the robbery when M.C.'s watch was found inside the car he described as driven by his assailants.  But there was no evidence regarding the location of the car when S.R. was arrested, nor were there other facts linking S.R. to the vehicle or the stolen watch.  The sole evidence at the hearing connecting S.R. to the robbery was M.C.'s in-court identification of S.R.

8

S.R.'s expert witness testified that, due to various factors, that identification was unreliable. For example, M.C. testified that his assailants wore scarves to cover the bottom portion of their faces, and he did not believe he could identify them immediately after the robbery. Similarly, we do not know how much time elapsed during the robbery, but we know it happened very quickly. So, M.C.'s exposure to his assailants was limited. M.C. was also under tremendous stress. He was thrown to the ground, robbed at gun point, and could not move or manage to call for help.

Notably, after the robbery M.C. told a responding officer that his assailants wore black clothing, were black or had dark complexion, and were in their 20's or 30's. Based on the petition and the picture of S.R. taken on the night of his arrest and admitted into evidence, S.R. was wearing black clothes but he was only seventeen years old and is a light-skinned Latino. Besides the black clothing, S.R. did not match M.C.'s initial description of his assailants.

Other facts surrounding M.C.'s identification raise concern. M.C. testified that he told ADA Kassie Lee that he recognized S.R. five days after the robbery, when he saw him during the detention hearing. However, M.C. did not provide his formal identification to the police until a year and four months after the robbery. This is a significant delay. Moreover, M.C.'s identification of S.R. in the first court appearance was unduly suggestive, because when M.C. recognized him, S.R. was before the court as the person police suspected of the crime. (Cf. *People v. Ochoa* (1998) 19 Cal.4th 353, 413 [" 'A[n identification] procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police.' "].)

9

M.C. testified that he recognized S.R. because of his eyes, which were exposed, and that he was 95 percent certain S.R. was one of his assailants. However, when M.C. recognized him, he was viewing S.R. and his co-responsible on the court video conferencing platform. M.C. attended many of the pretrial hearings and saw S.R. repeatedly before he testified at the jurisdiction hearing, and each encounter could have contributed to his certainty in identifying S.R.

Of course, M.C. also testified he had a "visceral" reaction to seeing S.R. through the screen at the court proceeding, and immediately recognized him. M.C. also stated that he had "a vivid recollection of much of what happened that stays with me today. I think about this attack every single day whether I want to or not. I'm often back in that moment reliving it and continuously traumatized by it."

Even so, because the court erroneously reviewed the probation report, the question before us is whether, based on the record as a whole, "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) Having reviewed the record, the jurisdictional facts presented at the hearing were "far from conclusive," and reversal is warranted. (*Gladys R.*, *supra*, 1 Cal.3d at pp. 861–862.)

## DISPOSITION

The juvenile court's jurisdictional order is reversed. By separate order filed today, we deny S.R.'s related petition for habeas corpus in number A172617.

_____

                              Siggins, J.*

WE CONCUR:


_____

Streeter, Acting P. J.


_____

Goldman, J.


(*In re S.R.*/A169269)

---

* Retired Presiding Justice of the Court of Appeal of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11