Filed 3/16/15  In re M.G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | B256227 (Los Angeles County Super. Ct. No. TJ20908) |
| THE PEOPLE, Plaintiff and Respondent, v. M.G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Catherine J. Pratt and Steven Klaif, Juvenile Court Referees.  Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jonathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

The juvenile court declared 12-year-old M.G. a ward of the court under Welfare and Institutions Code section 602 after finding true the allegation that he had violated Penal Code section 288, subdivision (b)(1),[1] by committing a lewd act on a child by force or fear. On appeal, M.G. contends the juvenile court erred because there was not substantial evidence that he had the specific intent to arouse his sexual desires.

We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Petition*

An amended petition filed pursuant to Welfare and Institutions Code section 602 alleged that in 2012 M.G. committed a forcible lewd act upon a child, R.R., in violation of section 288, subdivision (b)(1).[2]

## B. *The Jurisdiction Hearing*

The evidence at the jurisdiction hearing established that both M.G. and R.R. were 12 years old on May 2, 2012, when the alleged lewd act occurred at a Compton middle school. The primary issue at the hearing was whether M.G. had committed the alleged acts with the intent to sexually arouse himself as required by section 288, subdivision (b)(1).[3]

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     The juvenile court granted the People's motion to dismiss the allegation of sexual battery by restraint (§ 243.4, subd. (a)).

[3]     The People did not contend that M.G. intended to sexually arouse R.R.

1. *R.R.'s Testimony*

R.R. testified she was talking to her friend Mi. in gym class when two boys, M.G. and a friend, ran up to her. R.R. was frightened because the boys were smiling and she did not know what they were planning to do. R.R. knew M.G., but they had never talked. M.G. asked if he could give R.R. a hug, and she reluctantly agreed. M.G. then hit R.R.'s buttocks with his hand, as part of "Smack-ass Friday," a game in which middle school boys slap the girls on the buttocks. R.R. did not smack others as part of this game, but sometimes her friends smacked her.

After M.G. slapped her buttocks, R.R. and Mi. started leaving because it was the end of gym class. As they started to leave, M.G. and his friend began walking behind R.R. and Mi. When R.R. asked why the two boys were following her, they pushed her against a wall. M.G.'s friend positioned himself behind R.R. while M.G. was in front of her. The friend was trying to touch R.R. while M.G. was "humping" her from the front on her pelvic area. R.R. felt his "hard" penis ("private part") against her. R.R. testified as follows:

"Q    When he was humping you, did you feel—did you feel his private part?

"A    Yeah

"Q    How did it feel to you when he was humping you?

"A    Hard."

During her testimony, R.R. consistently said that while M.G. was "humping" her, she felt "something hard."[4]

While M.G. was "humping" her from the front, the friend was humping her from the back and touched her breasts. M.G. was holding her arm so she couldn't leave. While they were humping her, R.R. asked them to stop. M.G. then twisted her left nipple, which was very painful. R.R. was crying and afraid. She asked the boys to leave

---

[4]    R.R. consistently said that she felt M.G.'s private part on her pelvic area. However, on cross-examination, she was asked, "So you felt something, could have been his leg; correct?" R.R. answered, "Yes."

her alone and tried to get away from them.  At some point, R.R. was able to break free and went with Mi. to the school office and reported what had happened.

2. *Testimony of Mi. and School Police Officer*

Mi. testified she was talking to R.R. when M.G.'s friend and then M.G. approached and touched R.R.'s buttocks.  Mi. corroborated R.R.'s testimony, including that both M.G. and his friend grabbed her.  She testified that M.G. grabbed R.R. by her waist, and the friend restrained her by holding her arms.  She also testified that both M.G. and his friend touched R.R. on her breasts.

The principal difference in R.R.'s testimony and Mi.'s testimony is that, according to Mi., only M.G.'s friend humped R.R.; M.G. backed away when his friend started humping her.  Mi. described R.R. as screaming to "stop," and then when R.R. got free, they went to the office together.

Compton School Police Officer Serene Guillot testified that she interviewed R.R. in the school office after the incident.  She testified that R.R. told her that M.G.'s friend held R.R.'s arms and started to "hump" her.  While the friend was humping her, M.G. was holding her right bicep.  R.R. broke away and M.G. grabbed her by the waist, and "he pulled her waist back towards his private area and began to hump her."  Then both M.G. and the friend sandwiched R.R. between them and humped her at the same time.  At some point R.R. was able to break free, and she ran to the office.  R.R. also said that M.G. squeezed one of her breasts and that it really hurt.

Guillot also interviewed M.G.[5]  M.G. told Guillot that he chased R.R., hugged her, and touched her buttocks after his friend had told him to "get [R.R.]"  M.G. told the officer he then held R.R.'s arms while his friend humped and kissed her.

---

[5]      Guillot testified that prior to talking with M.G. about the incident, she made an inquiry under *In re Gladys R.* (1970) 1 Cal.3d 855, 858, as to whether he appreciated the wrongfulness of his conduct, and provided advisements under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].  She testified further that M.G. waived his rights.  M.G. does not challenge the *Gladys R.* inquiry or *Miranda* waivers on appeal.

### 3. *Defense Motion To Dismiss*

At the close of the People's case, M.G.'s counsel moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1, arguing the People had failed to prove M.G. had acted with the requisite sexual intent required under section 288, subdivision (b)(1). After hearing argument, the court denied the motion.

### 4. *M.G.'s Testimony*

M.G. testified in his own defense. He acknowledged he had approached R.R. and Mi. during gym class and had given R.R. a hug. R.R. then reminded him it was "Smack-Butt Friday," so he "smacked her butt." When M.G.'s friend walked up and started humping R.R., M.G. and Mi. backed away. At some point, R.R. broke free from M.G.'s friend and ran to the school office. M.G. said he and R.R. were friends. He denied humping R.R., grabbing her breast or restraining her while his friend humped her.

### 5. *Juvenile Court's Findings*

Following argument by counsel, the juvenile court in its ruling reviewed each of the elements of section 288, subdivision (b)(1), using CALCRIM No. 1111. The juvenile court found that the first three elements were clearly satisfied, including that M.G. had touched a child's body, he used fear to commit the touching, and R.R. was under the age of 14.

The court then turned to the requirement that the minor committed the act "with the intent of arousing, appealing to, or gratifying the lusts, passions, [or sexual desires] of himself . . . ." In considering the required intent, the juvenile court considered the holding in *People v. Martinez* (1995) 11 Cal.4th 434, in which our Supreme Court held that the court should consider "the relationship of the parties, the nature of the touching, and the presence or absence of any nonsexual purpose" as relevant to the issue of the required sexual intent under section 288. (*Martinez*, *supra*, at p. 450, fn. 16.)

Based on the testimony of R.R. and Mi., which the court found credible, the court determined the nature of M.G.'s touching of R.R. was "clearly sexual," and not non-

5

sexual "attention-seeking behavior." The court noted that Mi.'s testimony corroborated much of R.R.'s testimony, and found: "I do think that the corroboration of [Mi.] of . . . the large part of what [R.R.] says leads me to believe the description of the touching consistent with what the girls stated."

The juvenile court found the allegations in count 2 of the amended petition alleging a violation of section 288, subdivision (b)(1), to be true. Based on this finding, the court sustained the petition and found M.G. to be a person described by Welfare and Institutions Code section 602.

## C. *The Disposition Hearing*

After finding the allegations of the amended petition true and sustaining the petition, the juvenile court declared M.G. a ward of the court and placed him home on probation.

## DISCUSSION

M.G. argues that sufficient evidence did not support the juvenile court's true finding that he violated section 288, subdivision (b)(1), by committing a lewd act upon a child, R.R. In particular, M.G. claims the evidence failed to support a finding of intent to sexually arouse.

## A. *Standard of Review*

The same standard governs review of the sufficiency of the evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] . . . [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] '. . . [Citation.] We resolve neither credibility

6

issues nor evidentiary conflicts . . . . [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *In re Jerry M.* (1997) 59 Cal.App.4th 289, 297-298.)

**B.** ***To Prove a Violation of Section 288, Subdivision (b)(1), the People Must Prove Intent To Sexually Arouse***

Section 288, subdivision (a), prohibits "any lewd or lascivious act . . . [on] a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." As our Supreme Court held in *People v. Martinez*, *supra*, 11 Cal.4th at page 444, "a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." The court held further: "[T]he 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, *although it may have the outward appearance of innocence*, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation.]" (*Ibid.* [finding substantial evidence to support § 288, subd. (b) conviction as to two 13-year-old girls where adult defendant grabbed girls and held them against his body].)

To establish the requisite intent, "'[T]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent.' [Citations.] Other relevant factors can include the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation]." (*People v. Martinez, supra,* 11 Cal.4th at p. 445.) In addition, courts have also looked to whether

7

the perpetrator admonished the victim not to disclose the occurrence, physical evidence of sexual arousal, the clandestine nature of the incident, and the age of the defendant at the time of the incident.  (*In re Jerry M.*, *supra*, 59 Cal.App.4th at p. 299.)

M.G. relies heavily on the holding in *In re Jerry M.*, in which an 11-year-old boy was charged with several counts of committing a lewd act upon a child after he touched the breasts of two 12-year-old girls and a 13-year-old girl.  The Fourth District rejected the argument that an 11-year-old was too young to commit a lewd act for his sexual arousal.  (*In re Jerry M.*, *supra*, 59 Cal.App.4th at pp. 296-297.)  However, the court found no evidence that the boy committed the acts for his own sexual arousal.  The court based this finding on the facts that the boy had not reached puberty, there was no evidence he was sexually aroused, he knew the victims, committed the acts in public, did not admonish the victims not to disclose the occurrence, and there was only momentary contact without caressing.  (*Id*. at p. 300.)  The court concluded that Jerry "was a brazen 11-year-old whose conduct was more consistent with an intent to annoy and obtain attention than with sexual arousal."  (*Ibid.*; cf. *In re Randy S.* (1999) 76 Cal.App.4th 400, 407-408 [finding 11-year-old boy had intent to arouse his own sexual desires by placing his fingers inside his two-year-old stepsister's vagina based on nature of act and minor's efforts to do act in clandestine way, even though he had not yet reached puberty]; *In re Paul C.* (1990) 221 Cal.App.3d 43, 54 [13-year-old boy had sexual intent in coercing nine-year-old boy to orally copulate him].)

As the Third District held in *In re Paul C.*, the necessary criminal intent under section 288, subdivision (b), "is manifested by the circumstances under which the act is committed."  (*In re Paul C.*, *supra*, 221 Cal.App.3d at p. 54.)  The court found that the 13-year-old defendant had the required sexual intent in light of evidence that he had an erection during the sexual act.  (*Id*. at pp. 48-49.)  We next turn to the facts of this case.

**C.** *There Was Substantial Evidence That M.G. Intended To Arouse Himself Sexually by Touching R.R.*

M.G. argues the record shows his conduct, similar to that of the 11-year-old boy in *In re Jerry M.*, was merely meant to annoy or harass R.R. in the context of a game. While M.G. acknowledges the nature of his physical contact with R.R. may have exceeded the parameters of the game to the point of being sexually suggestive, he maintains that does not support a finding his contact was sexually motivated. He also points out that the incident occurred in public and that M.G. and his friend did not attempt to conceal their actions.

We find the facts of this case are closer to those in *In re Paul C.* than to *In re Jerry M.* in light of the nature of the acts (including "humping" R.R.'s pelvic area and touching her breast) and the fact that M.G. likewise had an erection. These actions go significantly beyond any game of students "smacking" girls' buttocks.

M.G. also argues that the testimony of both R.R. and Mi. was confusing and contradictory. However, the juvenile court found, after observing the testimony of all witnesses, that the testimony of R.R. and Mi. was sufficiently corroborated and that it believed their accounts of what happened. "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Further, "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young*, *supra*, 34 Cal.4th at p. 1181; see also *People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["testimony of a single witness is sufficient for the proof of any fact"].) In this case, nothing in the record suggests the testimony of R.R. or Mi. was inherently improbable or physically impossible. To the contrary, their testimony described a series of sexual acts performed by M.G. on R.R. that supported a finding that he had the intent to be sexually aroused.

9

## DISPOSITION

The order is affirmed.

FEUER, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.