Filed 1/12/26  In re A.G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.G.,<br><br>    Defendant and Appellant. | G065628<br><br>(Super. Ct. Nos. 25DP0358, 25DP0359)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Adrianne Marshack, Judge. Affirmed. Request for judicial notice. Denied.

Lelah S. Forrey-Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

*          *          *

M.G. (mother) appeals from the juvenile court's true findings under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1] Mother does not challenge the court's exercise of jurisdiction over her children, A.G. and C.G., now both seven years old (the children), or the court's disposition order. Rather, she contends substantial evidence did not support the court's findings that mother physically abused the children and that the children were at substantial risk of harm.

We affirm. Substantial evidence supports the juvenile court's findings.

FACTUAL AND PROCEDURAL BACKGROUND

After getting in trouble at school for using profanity, A.G. told school staff that when mother gets angry, she curses at him and C.G.; A.G. also said mother put her hands on his neck the previous day: "My body needs air and when she does that my body can't get air. It feels like I might die." A report was made to the Orange County Social Services Agency (SSA). No marks or bruises were observed on A.G.'s neck. Both children were interviewed by SSA; C.G. confirmed she had seen mother "put her arms or hands around [A.G.]'s neck . . . 'but only for one second.'" Mother denied ever choking either of the children. Father denied knowing mother had choked the children and denied the children had reported any such abuse to him.[2]

Mother was arrested. The court denied an emergency protective order and instead signed a peaceful contact order allowing mother to return to the family home.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Father is not a party to this appeal.

About 10 days later, father sent an e-mail to SSA explaining (1) he puts the children to bed every night and has never observed any marks or injuries on either child; (2) A.G. had been at school every weekday between August and February, and the school had never reported any injuries caused at home; and (3) A.G. has ongoing behavioral issues and trouble regulating his emotions, and was being tested for ADHD and autism.

SSA filed a juvenile dependency petition in April 2025 alleging the children came within the court's jurisdiction under section 300, subdivisions (a) and (b)(1). The subdivision (a) claim was supported by the following facts:

"a-1. The children . . . have been physically abused and are at substantial risk of ongoing physical abuse in the care of the mother . . . and the alleged father . . . . On or around February 21, 2025, the child A[.G.] disclosed that the mother gets really angry with him and [C.G.], cusses at them, hits them, and puts her hands around their necks and chokes them. The child A[.G.] reported, 'My body needs air and when she does that my body can't get air. It feels like I might die.' The mother uses her hands, either one or both hands, to strangle the children by grabbing them by their throats and squeezing. The child A[.G.] reported it lasts for approximately 20 seconds and although he can still breathe, 'little air can pass.' The child C[.G.] reported seeing the mother put her hands around A[.G.]'s neck for 'one second' and A[.G.] will scream and cry when this happens. On one occasion, the mother strangled both children by their necks after they scratched the car door of the car parked next to them. The mother denied strangling the children. [Father] does not think the mother could or would strangle the children and he did not believe the children's disclosures of the mother strangling them. On or around February 26, 2025, Irvine Police Department

arrested the mother for felony child abuse. A judge granted a peaceful contact order for peaceful contact between the mother and children."

The subdivision (b)(1) claim was supported by allegation b-1, which was identical to allegation a-1, *ante*, and contained the following additional facts:

"b-3. The child, A[.G.], has educational and developmental needs. The alleged father . . . reported the child has behavioral concerns and issues at school and has an upcoming neurology appointment. On or around February 21, 2025, A[.G.] ran away to the boys' bathroom after using profanity at school because he did not want to get in trouble. During this incident, he disclosed that the mother hits, curses, and places her hands around his and [C.G.]'s necks to strangle them. The child is diagnosed with ADHD and autism.

"b-4. The mother . . . has unresolved anger management issues. The child A[.G.] reported the parents do not get along well and the mother will say bad words to the father and yell at him. The child C[.G.] reported everyone in the home does not get along very well when 'mommy gets mad' and that the mother yells at [father]. The mother becomes angry and will hit [and] curse[.] The mother has been primarily responsible for caring for the children since making the decision to leave her job when A[.G.] was asked to leave two private preschools at age 3.5, and [father] reported he is unaware of the mother's behaviors toward the children because he is at work."[3]

The court detained the children from mother after a detention hearing, but allowed them to remain in the custody and care of father under

---

[3] Other facts were alleged in support of the section 300, subdivision (b)(1) claim, but these were deleted from the petition.

4

a set of protective orders. Mother moved out of the family home and was given 12 hours of supervised visitation every week.

SSA's jurisdiction/disposition report recommended that the court sustain the petition, declare dependency, provide family maintenance services to father, and provide enhancement services to mother.

At the jurisdiction/disposition hearing, the juvenile court admitted the jurisdiction/disposition report and an addendum report into evidence. No testimony was offered. The court found true the allegations quoted *ante*, declared the children to be dependents of the juvenile court, vested custody and care of the children with mother and father, and ordered family maintenance services to mother and father, subject to protective orders.

Mother filed a timely notice of appeal.

## DISCUSSION

### I.

### STANDARD OF REVIEW AND JUSTICIABILITY

At a jurisdiction hearing, the juvenile court determines whether, by a preponderance of the evidence, the children fall within section 300. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the juvenile court's jurisdictional findings for substantial evidence. (*In re A.F.* (2016) 3 Cal.App.5th 283, 289.)

Mother argues some of the juvenile court's findings under section 300, subdivisions (a) and (b)(1), are unsupported by the evidence and must be reversed. She does not challenge all of the findings, however. Because the unchallenged findings (as to allegations b-3 and b-4) support the court's assertion of jurisdiction over the children, mother cannot challenge the issuance of the jurisdiction/disposition order in toto.

Generally, we do not review a challenge to only some of the jurisdictional findings. "Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. [Citation.] 'An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence' or is unchallenged. [Citation.]" (*In re L.O.* (2021) 67 Cal.App.5th 227, 237.)

An exception to this rule occurs when the parent demonstrates they will suffer a legal and practical consequence that is capable of being redressed by reversal of the juvenile court's jurisdictional finding. (*In re S.R.* (2025) 18 Cal.5th 1042, 1057 (*S.R.*).) A finding of a substantiated report of child abuse must be included on the California Child Abuse Central Index. (Pen. Code, § 11169, subd. (a); see *S.R.,* at p. 1048.) This constitutes a legal, practical consequence as identified in *S.R.*

SSA concedes that the appeal is justiciable because mother will face a specific legal consequence as a result of the true findings on the allegations in question. We therefore turn to the merits of the appeal.

## II.

### ANALYSIS

Section 300, subdivision (a), applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. . . . [A] court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was

6

inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (§ 300, subd. (a).)

Section 300, subdivision (b)(1), applies when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child," or the "willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left." (§ 300, subd. (b)(1)(A), (B).)

"Juvenile dependency proceedings are intended to protect children who are currently being abused or neglected, 'and to ensure the safety, protection, and physical and emotional well-being of *children who are at risk of that harm.*'" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) The court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) "The court may consider past events in deciding whether a child presently needs the court's protection." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

The jurisdiction/disposition report contains the following summary from the Irvine Police Department report regarding its investigation into A.G.'s claims of abuse against mother: "I spoke with both A[.G.] and C[.G.] in their room on the second floor of the home. I conducted a Gladys-R[4] questionnaire with the children to determine if they knew the

---

[4] A "*Gladys R.* questionnaire" provides questions "designed to determine if an arrestee under the age of 14 understands the wrongfulness of

7

difference between a truth and a lie. Both A[.G.] and C[.G.] were able to determine the difference between a truth and a lie. For further details, refer to my body worn camera footage. I asked them what they talked to [the social worker] about. A[.G.] stated that they talked to [the social worker] about when their mother squeezed their throats. A[.G.] then put both of his own hands on his neck in demonstration. C[.G.] stated that sometimes her mother gets very angry. When asked how long their mother squeezes their neck[, t]hey both gave several time frames from one second to five seconds. C[.G.] stated that they 'never die' when she squeezed their necks. I asked the children when the last time their mother put their hands on their necks, they described a time their mother had been cross with them that week. [¶] When I asked again if she had put her hands on their necks that time, they said they did not.[5] I asked C[.G.] again and she said her mother had only put hands on her neck one time. She stated that it was approximately two weeks ago. A[.G.] stated that his mother also put her hands on his neck at the same time. C[.G.] stated she and her brother are sometimes allowed to eat their snack in the front seats of their family vehicle if they are well behaved. When they got into the vehicle, they were not careful with the door and one of the doors hit another car. Their mother then got mad. While they were seated in the front seats of the vehicle, their mother put one of each of her hands on the

___

his or her actions, within the meaning of [Penal Code] section 26" and records the minor's responses. (*In re Joseph H.* (2015) 237 Cal.App.4th 517, 529, citing *In re Gladys R.* (1970) 1 Cal.3d 855.)

[5] This report contains an obvious error. We cannot determine whether the report should read "they said she did not," or "they said they did not remember," or something else. We have ignored this particular statement for purposes of determining whether substantial evidence supports the juvenile court's findings.

kids front of their throats and squeezed. I asked if they were able to breathe when she squeezed. Both children told me they could breathe. When I asked what they were feeling when it happened, C[.G.] stated she was sad. A[.G.] said he felt like he was going to die. When asked to reiterate he stated that he could breathe, but it was hard. I asked them if their mom had put hands on their neck before that incident. C[.G.] said no and A[.G.] said he did not remember. Later when he was asked the same question, A[.G.] said it had happened before, but he was not sure how many times i[t] had happened."

This language from the police report, included in the jurisdiction/disposition report, was specifically relied on by the juvenile court in reaching its findings. At the hearing, the court stated: "So the Court took some time to review [*In re*] *Isabella F.* [(2014) 226 Cal.App.4th 128] and subsequent cases and go back and look at the reports and what the children said with respect to the incident when their necks were squeezed. I did want to remind myself specifically what the children said. Did Mom just grab their necks, or did she grab and squeeze? And on pages 47 and 48 of the jurisdiction report, both of the kids did say that Mom grabbed their necks and squeezed. They could breathe, but the squeeze to the Court makes a difference, and—because that shows anger. That shows intention. That is dangerous. [¶] And so even though the children didn't actually suffer substantial physical harm, that behavior indicates to the Court that they are at risk. And we are taught as judicial officers that choking is—it's a strong indicator of lethality. I'm not saying Mom would ever do that to her children, but it's very concerning. [¶] So the Court finds that the agency has shown by a preponderance of the evidence that the allegations in the [section] 300[, subdivision] (a) count in paragraph (a)(1) are true, and the Court will sustain that count."

9

We conclude the evidence was sufficient to support the juvenile court's findings regarding mother's physical abuse of the children. Therefore, we affirm those findings.

### III.

### REQUEST FOR JUDICIAL NOTICE

Mother filed a request for judicial notice with her reply brief on appeal. Mother asks that we take judicial notice of the juvenile court's minute orders from October 2025, closing the dependency cases as to A.G. and C.G. and returning full custody to both parents. Trial court records are proper matters for judicial notice. (Evid. Code, § 452, subd. (d)(1).) But these documents relate to proceedings occurring after the findings at issue in this appeal were made. (Cal. Rules of Court, rule 8.252(a)(2)(D).)

Appellate courts rarely accept postjudgment evidence or evidence that is developed after the challenged ruling is made. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405, 413–414 (*Zeth S.*).) The *Zeth S.* court set forth the general rule that "'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal." (*Id.* at p. 405.)

*Zeth S.* was primarily concerned with postjudgment evidence aimed at a reconsideration of the lower court's factual findings and ultimately a reversal of the judgment. (*Zeth S., supra*, 31 Cal.4th at p. 413;

10

see *In re Josiah Z.* (2005) 36 Cal.4th 664, 676.) This is, in essence, what mother is requesting here.

While we applaud mother for completing her case plan and reuniting with the children in a relatively short amount of time, the termination of dependency proceedings does not mean that the findings were inaccurate or unsubstantiated when they were made. We therefore deny the request for judicial notice.

DISPOSITION

The juvenile court's jurisdiction/disposition order is affirmed.


BANCROFT, J.*

WE CONCUR:


GOODING, ACTING P. J.


SCOTT, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.