Filed 3/12/26  In re S.W. CA1/5
Opinion after recalling remittitur

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.W., a Person Coming Under the Juvenile Court Law. | |
| _____ | A169378 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (City & County of San Francisco Super. Ct. No. JW22-6034) |
| v. | |
| S.W., | |
| Defendant and Appellant. | |

Defendant S.W. appeals the juvenile court's jurisdictional order, contending that the court improperly reviewed his probation report and related motions before determining jurisdiction, in violation of Welfare and Institutions Code section 701 and California Rules of Court, rule 5.780(c).[1] S.W. further contends that this error was prejudicial because the victim's identification of him as one of the perpetrators of the robbery was unreliable and inconclusive.  We agree and reverse.

_____

[1] All further statutory references are to the Welfare and Institutions Code and all further rule references are to the California Rules of Court, unless otherwise specified.

# I. BACKGROUND

### A. Procedural History

On July 19, 2023, an amended juvenile wardship petition was filed against S.W., alleging that he committed second degree robbery (Pen. Code, § 211; count I) and was an accessory after the fact — knowledge of crime (*id.*, § 32; count II). The juvenile court held a contested jurisdictional hearing at which both the victim and a defense expert in eyewitness identification testified.

Following the hearing, the juvenile court found that the second degree robbery allegations had been proven beyond a reasonable doubt and sustained the petition as to count I. The court dismissed count II. At the disposition hearing, the court declared S.W. a ward of the court and placed him on probation in the custody of his parents with a maximum confinement time of three years. S.W. timely appealed.

On June 7, 2024, S.W. filed a *Wende*[2] brief. We conducted an independent review of the record and affirmed the judgment in *In re S.W.* (Aug. 27, 2024, A169378) [nonpub. opn.]. A remittitur subsequently issued. On August 19, 2025, S.W. filed a motion to recall the remittitur, citing *In re S.R.* (July 18, 2025, A169269) [nonpub. opn.], a case in which Division Four of this court reversed the juvenile court's jurisdictional order as to coparticipant S.R., who was tried together with S.W. We granted S.W.'s motion on October 7, 2025.[3]

---

[2] *People v. Wende* (1979) 25 Cal.3d 436.

[3] We grant S.W.'s unopposed request for judicial notice of the People's response to motion to recall the remittitur as well as *In re S.R., supra,* A169269. (See *People v. Woodell* (1998) 17 Cal.4th 448, 455 [a court may take " ' "judicial notice of the *existence* of judicial opinions . . ., along with the truth of the results reached" ' "].)

## B. The Robbery

On March 18, 2022, Marcus C. was walking by a parking lot in the late afternoon when he noticed a dark gray or black sedan drive through the parking lot and then slow down significantly. Moments later, three men wearing masks rushed towards him, demanding that he give them his watch and wallet. Marcus C. either fell or was pushed to the ground and was lying on his back. Two of the men were holding handguns, and the third was holding an assault rifle. Marcus C. screamed as the men tried to reach into his pockets. The man to Marcus C.'s left took Marcus C.'s watch off his wrist, struck him in the forehead with the butt of his gun, and yelled " 'faggot.' " The three men then got back into the sedan and drove off.

After the police arrived at the scene, Marcus C. identified the sedan as a Mercedes and described the three suspects as "black men in their 20's" "wearing black clothing . . . ." He further noted that one suspect "had an olive green and black scarf."

Roughly four and a half hours after the robbery, the police arrested S.W. outside of a parking garage along with three other suspects inside the garage. The police found Marcus C.'s watch in the center console of a car that matched the description Marcus C. had provided.[4] S.W. was 17 years old and was wearing a red hoodie at the time of his arrest.

Later that month, the probation department filed a detention report that included a summary of the police incident report. The report noted that after the robbery, the police "conducted a high risk felony stop" of the subject Mercedes after its occupants were linked to "separate auto burglaries." After

---

[4] The parties stipulated to these facts at the jurisdictional hearing. The stipulation did not, however, state where the car was located in relation to where the suspects were arrested.

3

the Mercedes stalled in front of a parking garage, the suspects, including S.W., fled on foot and were arrested. None of this information was presented through evidence properly introduced at the jurisdictional hearing.

In May 2022, S.W. filed a motion for voluntary probation. The motion stated that three firearms were found at the scene where the Mercedes had stalled and that S.W. was the driver of the Mercedes, although he was not in possession of any of the firearms. The motion further noted that S.W. wrote to defense counsel that he "felt 'very remorseful for what he did and the role he played and how it affected [Marcus C.'s] life.' " The juvenile court denied the motion. S.W. filed two subsequent motions for voluntary probation that the court also denied. The third motion included a February 2023 e-mail from Assistant District Attorney (ADA) Kasie Lee to defense counsel, which stated that after Marcus C. saw S.W. on video at a hearing in November 2022, he told her that "he recognized S.W. as the individual who pistol whipped him."[5] Lee's e-mail continued that Marcus C. "had made a similar disclosure to ADA Ivan Rodriguez in May . . . 2022."

C. The Jurisdictional Hearing

Beginning October 31, 2023, the juvenile court held a contested jurisdictional hearing as to both S.W. and S.R that lasted several days. At the start of the hearing, the court granted defense counsel's request that motions and objections made by one minor were to be deemed made by the other minor.

1. *Marcus C.'s Testimony*

Marcus C. testified that on March 23, 2022, five days after the robbery, he attended a hearing by video conference and saw the suspects' faces. He recognized S.W. by his eyes and hair as the man on his left who had struck

_____

[5] This e-mail was admitted into evidence at the jurisdictional hearing.

him with a pistol. Specifically, Marcus C. described the eyes as "beadier . . . not wide eyes" and the hair as "short braids or dreads." He also recognized S.R. by his eyes as the man on his right during the robbery. Marcus C. explained that he did not initially give these descriptions to the police because he "had just been attacked . . . [and] was covered in blood" and "really just wanted to get to the hospital." He testified that he told ADA Lee about his March identification and requested a formal lineup, which never occurred. Marcus C. continued that he subsequently saw and recognized S.W. and S.R. at several other remote hearings. He then made an in-court identification of both S.W. and S.R.

In July 2023, Marcus C. provided a statement to the police regarding his identification of S.W. and S.R., and a recording of that statement was admitted into evidence. In his statement, Marcus C. reiterated that he recognized the minors by their eyes at the first court hearing and that S.W. was the one who pistol whipped him. As for his original description of the suspects as "black males in their twenties and thirties," Marcus C. explained that "seventeen can also look like a fully grown adult male" but conceded that "[S.R. is] probably Hispanic." At the jurisdictional hearing, when asked whether it was "apparent . . . that [S.R. was] not black," Marcus C. testified that S.R. was "a person of color" who "could be of mixed race." He concluded that he was "95 percent certain" that S.W. and S.R. were the ones on his left and right, respectively, during the robbery.

### 2. *Minor's Expert Testimony*

The defense called an expert in eyewitness identification and memory reconstruction. The expert identified multiple factors that cast doubt on Marcus C.'s identification of S.W. and S.R. These included exposure time to the suspect, whether the suspect was disguised, whether the witness was

5

distracted (particularly by the presence of a weapon), and how much time passed before the identification. Another factor was cross-racial identification, and the expert explained that people are "more accurate identifying people of [their] own race rather than people of a different race or ethnicity." Finally, the expert testified that an in-court identification of a suspect "is a highly biased form of information that should not be considered reliable or accurate."

Based on a hypothetical including all of those factors, the expert opined that she would have doubts as to how clearly a witness like Marcus C. saw the suspects and the reliability of his in-court identification of them.

### 3. *Judicial Notice of File*

On the first day of the jurisdictional hearing, S.R.'s counsel asked the juvenile court to take judicial notice of the court minutes. The court responded that it "will take judicial notice of everything in the file" and review "these files . . . during the trial." No counsel objected.

After the juvenile court determined jurisdiction on November 2, 2023, S.R.'s counsel asked whether the court had reviewed "the court file," which contained "probation reports, motions" and "possibly a police report." The court responded that it did not review the police report but "read all of the other stuff." Counsel then highlighted, "So the probation reports, for example, would have made factual assertions with regard to [the] integrity of what happened. But did the [c]ourt take that into consideration with regard to this ruling?" The court replied that it took judicial notice of the entire file as requested, to which counsel stated, "[w]ell, specifically on moving the minutes into evidence."

At this point, the juvenile court stated that it would "decline to offer a Statement of Decision, if that's what [counsel was] asking," and proceeded to

6

inform the minors of their rights to appeal. S.R.'s counsel then noted, "I just want to clarify for the record lest that we appeal, my only request was for the [c]ourt to take judicial notice of the court minutes." The court reiterated, "Well, I took the judicial notice of the entire file which . . . included many home detention[ ] [reports], many, all of which were sterling, outstanding . . . . I want to commend both [S.W. and S.R.] for that. That's all I'm going to say."

## II. **DISCUSSION**

### A. Law and Standard of Review

The history of section 701 "indicates that the Legislature intended to create a bifurcated juvenile court procedure in which the court would first determine whether the facts of the case would support the jurisdiction of the court in declaring wardship and *thereafter* would consider the social study report at a hearing on the appropriate disposition of that ward." (*In re Gladys R.* (1970) 1 Cal.3d 855, 859 (*Gladys R.*).) The primary purpose of the jurisdictional hearing "is to determine whether sufficient evidence exists to declare the minor a ward of the juvenile court. [Citations.] If the court finds that the minor is a person described in section 602, the court must . . . determine whether the minor's offense would be a misdemeanor or a felony if committed by an adult. [Citations.] The court then proceeds to hold a disposition hearing." (*In re P.A.* (2012) 211 Cal.App.4th 23, 31–32.)

At the jurisdictional hearing, "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by [Welfare & Institutions Code] [s]ection 602." (Welf. & Inst. Code, § 701.) Rule 5.780(c)

further provides that the juvenile "court must *not* read or consider any portion of a probation report relating to the contested petition before or during a contested jurisdiction hearing." (Italics added.)

The juvenile court's erroneous consideration of a probation report before determining jurisdiction is reviewed for harmless error under *People v. Watson* (1956) 46 Cal.2d 818. Under that standard, we determine whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.)

B. <u>Forfeiture and Invited Error</u>

The People contend that S.W. forfeited his claim by failing to adequately object below. While we agree that defense counsel could have been more explicit in objecting to the juvenile court's review of the probation reports, we find that counsel nonetheless sufficiently raised the issue to preserve it for appeal.

"An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide. [Citations.] In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*People v. Scott* (1978) 21 Cal.3d 284, 290.) Here, defense counsel *only* asked the juvenile court to take judicial notice of the court minutes. The court then, on its own initiative, took judicial notice of the entire court file. Although counsel did not object at that time, the court also stated that it had not yet reviewed the file so counsel arguably had no reason to believe that the court would review materials in the file it was prohibited from reviewing. Indeed, the prosecution suggested that the court would only be reviewing the court minutes, by responding, "if for some reason [the minutes are] not in there, then I think we can bring this back up."

8

But as the People concede, following the hearing, defense counsel did object that the file contained "probation reports, motions, [and] oppositions," all of which contained "factual assertions with regard to [the] integrity of what happened." This fairly apprised the juvenile court that its review of the probation reports, as well as any summary of those reports in the detention reports, was improper. In any event, to the extent the court did not understand the issue based on its colloquy with counsel, we exercise our discretion to reach the merits. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].)

We also reject the People's claim of invited error. Invited error bars a claim on appeal "when a defendant, for tactical reasons, makes a request acceded to by the trial court and claims on appeal that the court erred in granting the request." (*People v. Russell* (2010) 50 Cal.4th 1228, 1250.) Here, defense counsel only asked the juvenile court to take judicial notice of the court minutes. The court, however, took judicial notice of "everything in the file" on its own motion. At the conclusion of the hearing, counsel raised a concern that the file contained probation reports and motions that the court should not consider at the jurisdictional hearing and the court again responded that it had taken judicial notice of the entire file. Counsel then reiterated that he only asked the court to take judicial notice of the court minutes. On these facts, we find no invited error.

C. <u>Prejudicial Error</u>

Turning to the merits, we hold that the juvenile court's review of probation reports and related documents in the court file prejudiced S.W. because the evidence presented at the jurisdictional hearing was close and did not conclusively establish that S.W. was involved in the robbery.

9

If the jurisdictional facts presented at the hearing are "far from conclusive," the juvenile court's review of the probation report prior to determining jurisdiction constitutes prejudicial error. (*Gladys R., supra*, 1 Cal.3d at p. 862.) Thus, if the "determination of jurisdiction" is made by "closely balanced evidence," reversal is proper. (*In re James B.* (2003) 109 Cal.App.4th 862, 875.)

At the jurisdictional hearing, the parties stipulated that S.W. was arrested outside of a parking garage four and a half hours after the robbery and that Marcus C.'s watch was found in a car matching the description that Marcus C. had given to the police. But the stipulation did not describe the car's location in relation to where S.W. was arrested or any other facts connecting S.W. to the car or watch. And there was no evidence at the hearing connecting S.W. to the car or watch. Indeed, the only evidence of this connection came from the probation report and other related documents in the court file that the court should *not* have reviewed or considered.

Instead, to establish S.W.'s guilt, the prosecution primarily relied on Marcus C.'s in-court identification of S.W. as the one who had pistol whipped him. But there were several issues with Marcus C.'s testimony that cast doubt on the reliability of his identification of S.W.

First, Marcus C. testified that he immediately recognized S.W., even though the attacker was masked, at a remote court hearing five days after the robbery based solely on S.W.'s eyes and hair. But this initial identification was problematic because S.W. was appearing in court as a suspect. (*People v. Ochoa* (1998) 19 Cal.4th 353, 413 [an identification " 'procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police' "].) As the defense expert explained, "an in-court identification is a highly biased form of

information." Compounding this potential bias, Marcus C. saw S.W. on video at several more hearings before his in-court identification at the jurisdictional hearing.

Second, Marcus C. initially described the suspects as "black men in their 20's" to the police. But both S.W. and S.R. were 17 years old at the time of the robbery, and S.R. is a light-skinned Latino.

Third, Marcus C. did not provide the police with a formal identification of S.W. as one of his attackers until July 2023, well over *a year* after the robbery and after he had already seen S.W. on video at numerous court hearings.

Finally, Marcus C. testified that he told ADA Lee that he recognized S.W. after the first court hearing in March 2022. But Lee did not appear in this case until August 2022.

Based on these issues and the factors, such as limited exposure, distractions, and the presence of guns, identified by S.W.'s expert as casting doubt on Marcus C.'s identification of S.W. as one of his attackers, we conclude that the evidence of S.W's guilt was "far from conclusive." (*Gladys R., supra*, 1 Cal.3d at p. 862.) We therefore find prejudicial error. (*Ibid.*)

### III.  DISPOSITION

The juvenile court's jurisdictional order is reversed.


CHOU, J.


WE CONCUR.


SIMONS, ACTING P. J.
BURNS, J.

11